Brian Travis **SAATHOFF**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–93–00261–CR.

Court of Appeals of Texas, San Antonio.

Sept. 13, 1995.

Charles D. Butts, Law Offices of Charles Butts, San Antonio, James P. Sieloff, Law Offices of James P. Sieloff, San Antonio, for Appellant.

Rogelio Munoz, Assistant District Attorney, Uvalde, Jeffrey L. Van Horn, Assistant State's Attorney, Austin, for Appellee.

Before CHAPA, C.J., and RICKHOFF and HARDBERGER, JJ.

CHAPA, Chief Justice.

Upon remand from the Court of Criminal Appeals, the following opinion is submitted.

Appellant, Brian Travis Saathoff, appeals a conviction for involuntary manslaughter. He was sentenced to electronic monitoring for 120 days in lieu of incarceration, seven years' probation, community service, and counseling. The dispositive issue before us is whether the indictment failed to put appellant on notice of his crime. TEX.R.APP.P. 90(a).

Appellant's conviction stems from an automobile accident that occurred on June 15, 1992, in Medina County, in which Denise Ward was killed. Appellant left San Angelo around 3:30 A.M. to drive to Hondo. While appellant was driving on Highway 90, his vehicle struck the car ahead of him in the rear. Appellant's car then crossed the center line and struck another car driven by Denise Ward head-on. Ward was killed on impact.

Because there was some evidence of intoxication, appellant was indicted for involuntary manslaughter based on section 19.05(a)(2) of

the Texas Penal Code,[1] which stated that a person commits involuntary manslaughter when he causes the death of an individual by accident when operating a motor vehicle while intoxicated.

■ In his first two points of error, appellant contends that the trial court erred in overruling his motion to quash. We note that the State initially claims the motion was untimely filed under article 28.01 of the code of criminal procedure, which requires all preliminary matters to be raised or filed seven days before a pre-trial hearing. TEX.CODE CRIM.PROC.ANN. art. 28.01, § 2 (Vernon 1989). Article 28.01, however, is not a mandatory provision, but is merely directed to the court's discretion. *Cantu v. State,* 546 S.W.2d 621, 621 (Tex.Crim.App.1977).

Aside from article 28.01, the code of criminal procedure also allows a defendant to object to a "defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences...." TEX.CODE CRIM. PROC.ANN. art. 1.14 (Vernon Supp.1995). Here, the record shows that the motion was filed on January 4, 1993, the day before the trial on the merits began. In light of the differences between these two provisions, article 1.14 further gives the court discretion to require all preliminary matters, including objections to the charge, to be raised seven days before a pre-trial hearing pursuant to article 28.01. *Id.* art. 1.14(b); *see id.* art. 28.01, § 2.

In the instant case, however, there is no indication that the trial court exercised its discretionary powers by ordering all preliminary matters to be raised beforehand pursuant to article 28.01. In fact, the trial court opened the discussion on January 4, 1993, by stating that the following proceeding was specifically on the motion to quash. Thereafter, the trial court took arguments from both

parties on the motion to quash, although the State attempted to invoke an article 28.01 objection. The State later acknowledged during the motion for new trial that the court had accepted arguments from the parties regarding the motion to quash, which the court may properly do under article 1.14. Thus, the motion to quash was properly heard, and the error was preserved for appellate review.

We now turn to the arguments under appellant's points of error. Appellant specifically argues that the indictment failed to specify which definition of intoxication the State intended to prove at trial.

The involuntary manslaughter statute in effect at the time of the accident adopted the definition of intoxicated as found in the Texas Revised Civil Statutes. TEX.PENAL CODE ANN. § 19.05(b). The pertinent language in article 6701*l*-1 of the Revised Civil Statutes was as follows:

(a)(2) "Intoxicated" means:

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, ... or a combination of two or more of those substances into the body; or

(B) having an alcohol concentration of 0.10 or more.[2]

In *State v. Carter,* 810 S.W.2d 197 (Tex. Crim.App.1991), the court of criminal appeals explained that these definitions established two types of offenses for driving while intoxicated. Under the first category, the State had to prove the defendant drove in a public place while not having the normal use of his mental or physical faculties due to some kind of intoxicant. *Id.* at 200. Under the second category, the State may establish driving while intoxicated as a matter of law by proving the defendant drove a motor vehicle

1. Act of June 11, 1987, 70th Leg., R.S., ch. 307, § 1, 1987 Tex.Gen.Laws 1698, *amended and renumbered by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3614, 3586 (effective Sept. 1, 1994) (current version at TEX.PENAL CODE ANN. § 19.04 (Vernon 1994)). For ease of understanding, this opinion will refer to the statutory provisions at issue as they were in effect at the time of the accident.

2. TEX.REV.CIV.STAT.ANN. art. 6701*l*-1 historical note (Vernon Supp.1995) (now repealed) [Act of March 28, 1985, 69th Leg., R.S., ch. 10, § 1, 1985 Tex.Gen.Laws 375, *repealed by* Act of June 19, 1993, 73rd Leg.R.S., ch. 900, § 1.15, 1993 Tex.Gen.Laws 3704 (effective Sept. 1, 1994)].

while having an alcohol concentration level of 0.10 or more in his bodily fluids. *Id.*

In the present case, the indictment merely alleged that on June 15, 1992, appellant "operate[d] a motor vehicle while intoxicated, and did by reason of such intoxication cause the death of an individual Denise Ward through accident and mistake...." Appellant argues this indictment failed to put him on sufficient notice regarding which form of intoxication the State intended to prove, violating his rights under the federal and state constitutions.

In *State v. Carter*, the court of criminal appeals specifically addressed the problem of defining intoxication in a charging instrument. First, the court emphasized the importance of notifying the defendant of the crime for which he is charged. It said:

> We have held repeatedly that [the Texas Constitution] requires that the charging instrument itself convey adequate notice from which the accused may prepare his defense. More specifically, we have held that a defendant is entitled to notice of the *acts or omissions* he is alleged to have committed.

*Carter*, 810 S.W.2d at 199 (citation omitted). The court further pointed out that a motion to quash must be granted if a charging instrument is so vague or indefinite that it denies a defendant effective notice of the criminal behavior for which he is charged. *Id.*

The court then added that whenever a statute provides that a criminal act or omission can be committed in several manners, the State must "allege the particular manner" of the act or omission to be proved at trial. *Id.; State v. Moreno*, 822 S.W.2d 754, 756 (Tex.App.—Corpus Christi 1992, no pet.). Consequently, the court of criminal appeals ruled that a charging instrument alleging the offense of driving while intoxicated must specify the definition of "intoxication" on which the State will rely. *State v. Carter*, 810 S.W.2d at 200. The court held as such even though there is no difference as to the gravity of the crime or the degree of punishment between the two forms of intoxication.

We find that the reasoning of the court of criminal appeals must also apply in this instance even though *State v. Carter* dealt only with the sufficiency of a charging instrument in a DWI case. The offense of involuntary manslaughter at the time of the accident involved two types of criminal conduct. One was causing the death of an individual while acting recklessly. Tex.Penal Code Ann. § 19.05(a)(1). The other was causing the death of an individual by accident when operating a motor vehicle while intoxicated. *Id.* § 19.05(a)(2). The State chose to prosecute appellant for involuntary manslaughter under the latter prong. Thus, the question of whether appellant was intoxicated became a critical element of the offense of involuntary manslaughter.

■ As stated above, the term "intoxication" involved different statutorily defined behaviors. Because intoxication was alleged as an element of the involuntary manslaughter offense, we find that it was necessary for the State to indicate which type of specific conduct was committed by appellant so that he would be adequately apprised of the nature of his offense. Tex.Code Crim.Proc. Ann. art. 21.11 (Vernon 1989); *see Thompson v. State*, 840 S.W.2d 548, 549 (Tex.App.—Tyler 1992, no pet.) (the court found the argument that *State v. Carter* should apply to an involuntary manslaughter case persuasive, yet overruled appellant's point because the motion to quash was untimely filed). Appellant's first two points are granted.

■ In his fourth point, appellant contends the trial court improperly overruled his motion for instructed verdict. A challenge to the trial court's ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App. 1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991).

■ In reviewing the sufficiency of the evidence, this court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99

S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Little v. State*, 758 S.W.2d 551, 562 (Tex.Crim. App.), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988); *see Valdez v. State*, 776 S.W.2d 162, 165 (Tex.Crim.App. 1989), *cert. denied*, 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990).

■ In assessing the sufficiency of the evidence to support a conviction, the reviewing court must consider all of the evidence which the jury was permitted, rightly or wrongly, to consider. *Thomas v. State*, 753 S.W.2d 688, 695 (Tex.Crim.App.1988); *Beltran v. State*, 728 S.W.2d 382, 389 (Tex.Crim. App.1987). If a portion of the evidence was wrongly admitted, the defendant may complain on appeal of such error. *Thomas*, 753 S.W.2d at 695.

■ The reviewing court does not resolve any conflict in fact, weigh the evidence, or evaluate the credibility of the witnesses. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The jury as trier of fact may accept or reject all or part of the testimony of any witness. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981).

Considering the evidence in the light most favorable to the verdict, the record reveals that the State introduced the testimony of a lab technician from Medina Community Hospital, who drew blood from appellant several hours after the accident and determined a blood alcohol concentration level of 0.075. A toxicologist with the Department of Public Safety also testified that she tested a blood sample from appellant after the accident. Using standards different from Medina Hospital's, her test showed appellant had a blood alcohol concentration of 0.05. The toxicologist further said that alcohol is burned off in the body at an average of 0.02 grams per hour. Given the lapse in time after the accident, the toxicologist speculated that appellant's alcohol level was 0.095 at the time of the accident. Furthermore, the jury could have inferred from this evidence that appellant's alcohol level at the time of the accident was 0.11 based on Medina Hospital's test.

■ An investigating police officer who arrived at the accident scene testified that he conducted a sobriety test on appellant and concluded that appellant was intoxicated. Another police officer who appeared at the scene testified that appellant had a smell of alcohol, bloodshot eyes, and slurred speech. A third police officer testified that she noticed a smell of alcohol on appellant's breath.

Another witness for the State testified that he was driving on the highway toward Hondo when he suddenly heard a loud noise and was hit from behind by another vehicle. The impact forced him off the road and into an adjacent ditch. Police later indicated that the witness had been hit by appellant's vehicle. A rebuttal witness for the State said that she was driving on the highway before the accident. She testified that appellant had passed her earlier on, exceeding the speed limit. She also indicated that she had noticed appellant's vehicle weaving along the road and crossing the center line.

Applying the appropriate standards, we find that the record contains sufficient evidence to support the conviction under either one of the types of intoxication defined by the Revised Civil Statutes. Therefore, the trial court did not err in overruling appellant's motion. The point is denied.

Because the trial court erred in denying appellant's motion to quash, the judgment was reversed and remanded by this court without conducting a harm analysis. On discretionary review, the court of criminal appeals agreed with this court's holding involving the defect in notice but noted "that a defect in notice must prejudice the substantial rights of a defendant before reversal is warranted." *Saathoff v. State*, 891 S.W.2d 264, 267 (Tex.Crim.App.1994). Consequently, the court remanded the case to this court to perform a harm analysis in accordance with *Adams v. State*, 707 S.W.2d 900 (Tex. Crim.App.1986). *Id.*

■ In *Adams*, the court acknowledged "that a defendant's right to 'demand

the nature and cause of the accusation against him' must be satisfied from the face of the charging instrument," but held that "Article 21.19 directs us to determine whether, although the right has not been satisfied from the charging instrument, the particular defect of notice harmed the defendant." *Adams,* 707 S.W.2d at 902–03. The court than established the following procedure in reaching the final determination of whether a defect of notice harmed the defendant:

> The important question is whether a defendant had notice adequate to prepare his defense. The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice". If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact.

*Id.* at 903.

In *Cook v. State,* 824 S.W.2d 334 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd), the court concluded that an *Adams* analysis required answering the following questions:

> (1) "Did the charging instrument fail to convey some requisite item of notice?"
> (2) "In the context of the case, did the defect have an impact on defendant's ability to prepare his defense?"
> (3) "How great was the impact on defendant's ability to prepare his defense?"

*Id.* at 338.

The court of criminal appeals has agreed with our holding that because there was a defective notice in the charging instrument, the trial court erred in denying the motion to quash. Therefore, the only remaining issue is whether the error is reversible. In order for the defect to warrant reversal, a determination must be made that the defective notice prejudiced the substantial rights of the appellant. *Saathoff,* 891 S.W.2d at 267. As directed by the court of criminal appeals, this is accomplished by performing an *Adams* analysis. *Id.*

Prior to trial, appellant urged a Motion to Quash insisting that the State specify which definition of intoxication and which type of intoxicant it would rely on to establish its burden. On the day before the trial, the State made an oral announcement in court that it would only rely on the loss of normal use of faculties, rather than the per se 0.10 alcohol concentration. Apparently satisfied that the State had complied, the court denied the Motion to Quash.

However, in the trial on the merits, the State proceeded to introduce considerable evidence regarding the alcohol concentration of the defendant, over the objections of the defense. The objections and re-urging of the Motion to Quash by the defense were overruled by the court. Raymond Raddatz, with the Medina Community Hospital Laboratory, testified that the blood alcohol concentration of the blood drawn from appellant was .075. The testimony of Sheryl Payton, a toxicologist for the Department of Public Safety, indicated that appellant's blood alcohol concentration was .05 and that appellant's blood alcohol concentration would have been .095 at the time of the accident using the average rate of metabolism, which is 0.02 grams per hour. However, a combination of the average rate of metabolism testified to by Payton, and the blood alcohol concentration testimony of Raddatz, would place the alcohol level at 0.11 at the time of the accident.

Although Officer Hughes testified that his sobriety test at the scene of the accident on appellant without the aid of an intoxilyzer resulted in his conclusion that appellant was intoxicated, other officers did not agree completely. Officer Kay Spivey, an EMS technician with the Hondo Police Department who attended to the injuries of the appellant at the scene, testified that the appellant had numerous facial injuries and the smell of stale alcohol but that in her opinion appellant was "impaired" owing to a combination of factors such as tiredness, rather than intoxicated. Trooper Alvin Vaughn of the Department of Public Safety testified that he investigated the accident, spoke to the appellant, and delivered one set of blood specimens to the Department of Public Safety Laboratory, which concluded that the alcohol contents were 0.05. Vaughn stated that although there was evidence of alcohol, he recommended charges of negligent homicide rather

than involuntary manslaughter because the results of the alcohol test did not support a finding of intoxication above the 0.10 mark.

In the court's charge, the jury was not only charged on the impairment definition of intoxication which the State selected to rely upon, but also on the alcohol concentration which the State had rejected. During deliberations, the jury sent the following question to the court, to which the court responded:

Jury: "Do we have to agree on both definitions of intoxication."

Court: "Please be guided by the law in paragraph 2 of the Court's charge."[3]

Although the statement of facts fails to include the arguments to the jury, it does include the hearing on appellant's Motion for New Trial. The Motion for New Trial record contains basically the arguments of appellant regarding the substantial harm the defective notice in the charging instrument caused to the preparation of a defense and of the harm caused by the misleading oral selection of the State immediately prior to trial. On the other hand, the State basically argued incorrectly that the law did not require the State to select one of the intoxication definitions in an involuntary manslaughter case but that such selection was only required in a DWI case. The hearing record further reflects appellant's uncontradicted statements, reminding the court that the State concentrated its closing arguments on the alcohol concentration evidence introduced over the appellant's overruled objections and motions to strike.

▪ The only remaining issue is whether the defective notice prejudiced the substantial rights of the appellant. *Saathoff*, 891 S.W.2d at 267. In the context of this record, we hold that the defective notice did prejudice the substantial rights of the appellant.

The basis used by the Texas Court of Criminal Appeals to find error in the trial court's failure to grant the motion to quash was the Texas Constitution:

We addressed this issue in *Carter*[4] and reaffirm that holding. The basic principles of notice concerning pleading requirements are well-established. Article I, § 10, of the Texas Constitution provides in relevant part that in "criminal prosecutions the accused ... shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof." This constitutional provision is the basis for the requirement that a charging instrument must give a defendant sufficient notice so as to enable him to prepare his defense.... Thus, if the prohibited conduct is statutorily defined to include more than one manner or means of commission, the State must, upon timely request, allege the particular manner or means it seeks to establish. *Ferguson [v. State*, 622 S.W.2d 846, 851 (Tex.Crim.App.1981) ].

*Saathoff*, 891 S.W.2d at 267. Consequently, since the right of appellant to proper notice here violated by the State and court is of constitutional dimensions, it necessarily follows that it cannot be described as an insignificant right.

Compounding the violation was the State's oral assertion in open court that it was going to rely only on the impaired definition of intoxication rather than the per se 0.10 alcohol concentration definition. In a civil context, this statement in open court would be considered a judicial admission. *Catherman v. First State Bank*, 796 S.W.2d 299, 302 (Tex.App.—Austin 1990, no writ). A judicial admission would then bar the party making it from disputing it later. *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 733 (Tex.App.—Corpus Christi 1994, writ denied).

We need not determine how bound the State may be in a criminal context by such a judicial admission, because it suffices to say

---

**3.** Paragraph 2 of the court's charge stated the following:

The word "intoxication," as used in these instructions and as applicable to this offense, means not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol into the body.

The term "intoxicated" also means having an alcohol concentration of 0.10 or more. The phrase "alcohol concentration," as used in this charge, means the number of grams of alcohol per 100 milliliters of blood.

**4.** *State v. Carter*, 810 S.W.2d 197 (Tex.Crim.App. 1991).

that the appellant had every reason to rely on the open court assertions of the State in preparing his defense. This is critical to the determination that we must make, for the constitutional right involved here exists clearly for the purpose of giving the defendant a fair opportunity of defending himself by giving him definite notice of the acts or omissions allegedly committed by him. *See Thomas v. State*, 621 S.W.2d 158, 163 (Tex. Crim.App.1981) (en banc) (op. on reh'g). In this respect, we agree with the appellant that preparation for a charge based on the impaired definition of intoxication differs completely from preparation for a charge based on the per se 0.10 alcohol concentration. Whereas lay fact witnesses play the most important part in the former, expert medical witnesses play the most important part in the latter. This record reflects that the appellant was completely unprepared with expert rebuttal testimony when the State concentrated its case on the 0.10 alcohol concentration definition over the objections of the defense. The confusion in the testimony involving the alcohol concentration of the two blood samples taken from the appellant at different times illustrates the necessity for the defense to have been better prepared to defend with regards to the alcohol concentration, which would have occurred had the motion to quash been granted. This became more critical when both definitions of intoxication were included in the charge to the jury. The obvious confusion of the jurors when inquiring whether they must agree on both definitions of intoxication in the charge is a further indication of prejudice to the substantial rights of the appellant because of the trial court's error. The record further reflected contradictions from the lay fact witnesses regarding the intoxication of the appellant. Nor can we say that the State failed to argue to the jury the definition they led the defense to believe they would not rely upon, since the defense's uncontradicted reminder to the court during the hearing on the Motion for New Trial establishes that the State did concentrate its jury arguments on the per se 0.10 alcohol concentration definition. The State bases much of its harmless error argument on prognostications as to what the State would have done had the

motion been properly granted and concludes that the error would have been harmless anyway. We are not permitted to engage in prognostication, but must rely exclusively on the record before us. This record reflects that the defective notice "prejudiced the substantial rights of the [appellant]." *Saathoff,* 891 S.W.2d at 267.

The judgment is reversed, and the cause is remanded for a new trial.