FILED IN
COURT OF CRIMINAL APPEALS

October 26, 2015

ABEL ACOSTA, CLERK

PD-0681-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/26/2015 11:16:40 AM
Accepted 10/26/2015 11:20:13 AM
ABEL ACOSTA
CLERK

No. PD-0681-15

# IN THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF TEXAS

DAVID LEE CLEMENT, JR.,
Appellant

v.

THE STATE OF TEXAS,
Appellee

* * * * * * * *

Appealed from Cause Number CR16160
271st Judicial District Court
Wise County, Texas
Honorable John H. Fostel, Presiding

* * * * * * * *

APPELLANT'S RESPONSE TO THE STATE
PROSECUTING ATTORNEY'S
BRIEF ON THE MERITS

* * * * * * * *

LAW OFFICE OF JIM SHAW
916 W. Belknap Street
Fort Worth, Texas 76l02
(817) 877-0401   FAX (817) 877-0404
State Bar No. 24076583
Attorneys for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS  …………………………………….................  2

INDEX OF AUTHORITIES  …………………………………….…..  3

BRIEF BEGIN  ……………..……………………………………….  5

STATEMENT REGARDING ORAL ARGUMENT …………………..  5

FACTUAL SUMMARY OF THE EVIDENCE ………………….……  6

RESPONSE TO ISSUE ONE ……………………………………….  9

RESPONSE TO ISSUE TWO …………………………………….…  14

CONCLUSION AND PRAYER  …………………………………….  18

CERTIFICATE OF SERVICE  ……………………………………..  19

CERTIFICATE OF COMPLIANCE WITH RULE 9.4  ……………  20

# INDEX OF AUTHORITIES

## (Cases)

*Amador v. State,*
221 S.W.3d 666 (Tex. Crim. App. 2007)……………………………… 15

*Clement v. State,*
461 S.W.3d 274 (Tex. App.—Eastland 2015) …………………….. 9

*Clement v. State,*
No. 11-13-00055-CR (Tex. App.—Eastland 2015) (op. on reh'g) …… 9

*Everitt v. State,*
407 S.W.3d 259 (Tex. Crim. App. 2013) ………….............…………… 9

*Lankston v. State,*
827 S.W.2d 907 (Tex. Crim. App. 1992) ………………………….… 13

*Layton v. State,*
280 S.W.3d 235 (Tex. Crim. App. 2009) ……………………….…… 9

*Owens v. State,*
861 S.W.2d 416 (Tex. App.—Dallas 1993, no pet.) …………..…… 16

*Postell v. State,*
693 S.W.3d 462 (Tex. Crim. App. 1985)………………………….… 12

*Saathoff v. State,*
908 S.W.2d 523 (Tex. App.—San Antonio, 1995 no pet.)…………… 12

*Sells v. State,*
121 S.W.3d 748 (Tex. Crim. App. 2003)………………………….… 12

(Articles, Codes, and Constitutions)

Texas Code of Criminal Procedure Art. 28.01 § 1(6) …………………… 11

Texas Code of Criminal Procedure Art. 28.01 § 2 …………………… 12

Texas Rule of Appellate Procedure 33.1(a)(1)(A) …………………… 9

IN THE COURT OF CRIMINAL APPEALS
OF THE STATE OF TEXAS

DAVID LEE CLEMENT, JR          §
                               §
V                              §          No. PD-0681-15
                               §
THE STATE OF TEXAS             §

Appealed from Cause Number CR16160
Honorable John H. Fostel, Presiding Judge
271st Judicial District Court
Wise County, Texas


**APPELLANT'S RESPONSE TO THE STATE
PROSECUTING ATTORNEY'S BRIEF ON THE MERITS**

TO THE HONORABLE JUSTICES OF SAID COURT:

COMES NOW, David Lee Clement, Jr., and respectfully submits

this Response to the State Prosecuting Attorney's Brief on the Merits.

**STATEMENT REGARDING ORAL ARGUMENT**

The Court did not grant oral argument.

# FACTUAL SUMMARY OF THE EVIDENCE

On January 30, 2011, Jeff Johnson, a trooper with the Texas Department of Public Safety, was on duty near a four-way intersection in Bridgeport, Texas, when he overheard a call on his radio referencing "a possible intoxicated driver" leaving the Exxon store located at the northwest corner of the intersection of 101 and 380. [II R.R. at 11-13]. Trooper Johnson later testified that the complaint stated that there was a possible intoxicated person in the store; it was not described as an intoxicated driver. [II R.R. at 16]. At the time Trooper Johnson heard this call, he was "just east" of the intersection; he then proceeded to the intersection and made a right-hand turn onto 101, going across the street to avoid the intersection. [II R.R. at 12-13]. While making this turn, Trooper Johnson noticed a white Pontiac and a Bridgeport Police vehicle in the parking lot of the Exxon. [II R.R. at 13]. As Trooper Johnson was turning around, he noticed the Pontiac's brake lights come on, the Pontiac start backing up, and ultimately go northbound on 101. [II R.R. at 13-14]. Trooper Johnson "noticed the vehicle accelerated quickly" so he "checked the vehicle on the radar." [II R.R. at 14]. The radar showed that the vehicle was travelling at a speed of 62 miles per

hour. [II R.R. at 14]. The posted speed limit in that area is 55 miles per hour. [II R.R. at 14]. Trooper Johnson did not observe anyone get into the white Pontiac. [II R.R. at 20]. Trooper Johnson did not go into the Exxon to check on the possible intoxicated person; rather, he followed the white Pontiac. [II R.R. at 17]. Trooper Johnson testified that he did not enter the store because it is in the Bridgeport city limits; as such, he would have been back-up to the Bridgeport police. [II R.R. at 17].

Based on the speed at which the Pontiac was travelling, Trooper Johnson initiated a traffic stop. [II R.R. at 18]. The traffic stop occurred outside the Bridgeport city limits and in an area where the posted speed limit is 65 miles per hour. [II R.R. at 18]. Trooper Johnson testified that the city limits is "several hundred feet" from the Exxon and Trooper Johnson activated his lights when he and the Pontiac were "several hundred feet" outside the city limits. [II R.R. at 18]. Trooper Johnson testified that he did not observe the Pontiac commit any traffic violations, other than travelling at 62 miles per hour in a 55 miles-per-hour zone, and the Pontiac did not weave within its lane. [II R.R. at 23]. When the Pontiac pulled over, Trooper Johnson indicated that the vehicle "almost struck the guardrail;" however, he testified that "there

is barely enough room for a vehicle" between the white shoulder line on the road and the guardrail and the vehicle did not hit the guardrail. [II R.R. at 23]. Trooper Johnson agreed that the ability to position the Pontiac entirely within the shoulder, not on the white line and not hitting the guardrail, was "pretty keen driving." [ II R.R. at 23-25]. Trooper Johnson approached the driver of the Pontiac, informed him that he was stopped for speeding, and then began investigating whether the driver was intoxicated. [II R.R. at 25-26]. During this detention, the driver of the Pontiac was identified as David Lee Clement, Jr. (Appellant herein). [II R.R. at 56]. As a result of this investigation, Appellant refused to perform any field sobriety tests. [II R.R. at 26]. Based solely upon the odor of alcohol on Appellant's breath, Trooper Johnson arrested Appellant for the offense of driving while intoxicated. [II R.R. at 26]. After hearing arguments the trial court denied Appellant's Motion to Suppress. [II R.R. at 31].

## APPELLANT'S RESPONSE TO THE STATE PROSECUTING ATTORNEY'S FIRST ISSUE PRESENTED

In its first point, the State argues that Appellant failed to preserve his challenge to the probable cause for his arrest. [State's Br. at 2]. However, the Eastland court of appeals correctly noted, twice, that Appellant preserved this challenge. *Clement v. State*, 461 S.W.3d 274, 281 n.5 (Tex. App.—Eastland 2015); *Clement v. State*, No. 11-13-00055-CR, at *4-9 (Tex. App.—Eastland 2015) (op. on reh'g). Specifically, the State and the trial court were put on notice about this challenge during the hearing on the motion to suppress. A timely, specific objection is required to preserve an issue for appellate review. Tex. R. App. P. 33.1(a)(1)(A). The objection must be specific enough to make the trial judge aware of the complaint. *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013). This Court has rejected hyper-technical requirements for preservation. *Id*. Rather, "all a party has to do…is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Layton v. State*, 280 S.W.3d 235, 239 (Tex. Crim.

App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Here, Appellant satisfied the three requirements to preserve his complaint. While the testimony began by covering Appellant's initial detention, the testimony continued beyond the initial traffic stop and carried through into Appellant's arrest. [II R.R. at 25-27]. Appellant's counsel questioned the officer about field sobriety tests, the odor of alcohol on Appellant's breath, and the "DWI routine." [II R.R. at 25-26]. Specifically, the following exchange occurred between Appellant's counsel and Trooper Johnson:

> Q: So, you arrested him, based upon the odor of alcohol on his breath?
> A: Yes, sir.
> Q: You didn't arrest him for speeding, did you?
> A: No, sir.
> Q: You can't do that, can you?
> A: Sir?
> Q: Can you arrest somebody for speeding?
> A: No, sir.

[II R.R. at 26-27].

Appellant's counsel then finished his cross-examination and the State was provided an opportunity to question the officer. [II R.R. at 27]. The State declined to do so. [II R.R. at 27]. Additionally, Appellant's

counsel re-called the officer and asked him questions regarding the occurrences following Appellant's arrest. [II R.R. at 28]. Again, the State declined to ask the officer further questions. [II R.R. at 28]. This line of questioning is clear and it is evident from the record that Appellant sought to suppress his arrest as an alternative challenge to the initial detention. Appellant's counsel asked questions directly related to the probable-cause factors and to the investigation following Appellant's arrest. Last, in closing argument, Appellant's counsel specifically argued that Appellant's arrest was not supported by probable cause. Therefore, Appellant's objection satisfied the specificity requirement.

Next, the State Prosecuting Attorney argues that Appellant's challenge to his arrest was untimely. [State's Br. at 10]. For a complaint to be preserved, the complaining party must make a timely request, objection, or motion that specifically states the grounds for the ruling, unless the specific grounds are apparent from the context. Tex. R. App. P. 33.1(a)(1)(A). A trial court may set a criminal case for a pre-trial hearing on a defendant's motion to suppress evidence. Tex. Code Crim. Proc. art. 28.01 § 1(6). Article 28.01, Section 2 provides that:

"When a criminal case is set for such pre-trial hearing, any such preliminary matters not raised or filed seven days before the hearing will not thereafter be allowed to be raised or filed, except by permission of the court for good cause shown; provided that the defendant shall have sufficient notice of such hearing to allow him not less than 10 days in which to raise or file such preliminary matters."

Tex. Code Crim. Proc. art. 28.01 § 2. This provision, however, is not a mandatory notice provision of 10 days for every pre-trial hearing. *Postell v. State*, 693 S.W.2d 462, 465 (Tex. Crim. App. 1985). In other words, the statute is read to mean that if the defendant has at least seventeen days' notice of the pre-trial hearing, then he must file pre-trial motions at least seven days before that hearing. *Sells v. State*, 121 S.W.3d 748, 763 (Tex. Crim. App. 2003) (en banc). Furthermore, Article 28.01 is not a mandatory provision; it is merely directed to the trial court's discretion. *Saathoff v. State*, 908 S.W.2d 523, 525 (Tex. App.— San Antonio 1995, no pet.) (citing *Cantu v. State*, 546 S.W.2d 621, 621 (Tex. Crim. App. 1977)).

Here, there is no evidence that the trial court used its discretion to order the pre-trial hearings. There is nothing in the record indicating that the judge ordered such a pre-trial hearing. Indeed, the record shows that the trial court, in its discretion, held the pre-trial hearings

on the day of trial rather than before and the State did not object to this. [I C.R. at 35]. Moreover, the record indicates that the hearing on Appellant's motion to suppress was set, and heard, on the same day the written motion was filed. [I C.R. at 35]; [II R.R. at 10]. Neither side objected to the trial court doing so. Therefore, Article 28.01 § 2 is inapplicable here, and the court of appeals properly rejected the State's reliance on this statute. *Clement*, No. 11-13-00055-CR, at *7. Appellant's objection was made during the pre-trial hearing on the motion to suppress; thus, it was made "at a time when the trial court is in a proper position to do something about it." *See, Lankston v. State*, 827 S.W.3d 907, 909 (Tex. Crim. App. 1992).

Additionally, Appellant's challenge to the probable cause for his arrest was timely and apparent from the context of his cross-examination, his re-calling of the officer, and his closing argument. While Appellant's written motion focused on the validity of the stop, the scope of the hearing evolved into the validity of the arrest and ultimately concluded with testimony concerning Appellant's arrest and the events that followed. [II R.R. at 25-28]. The State did not object to this line of questioning and testimony at the hearing. Again, Appellant's

counsel specifically asked Trooper Johnson, "So, you arrested him, based upon the odor of alcohol on his breath?" [II R.R. at 26]. The State did not ask Trooper Johnson any questions after Appellant's counsel's cross-examination. [II R.R. at 27]. After the State rested on the motion to suppress, Appellant's counsel re-called Trooper Johnson and questioned him about the mandatory blood draw and interviewing Appellant. [II R.R. at 27-28]. Again, the State did not take the opportunity to further question Trooper Johnson. [II R.R. at 28]. The State was provided two opportunities to question the officer about what, if any, factors went into his decision to arrest Appellant. [II R.R. at 27, 28]. In both instances, the State chose not to do so. [II R.R. at 27, 28]. The State was not deprived of the opportunity to present evidence to support Appellant's arrest. Conversely, the State was given ample opportunity to question the arresting officer. As stated above, Appellant's counsel re-called the officer and questioned him about events that occurred following Appellant's arrest. [II R.R. at 27-28]. The State was given the opportunity to cross-examine the officer. [II R.R. at 28]. The State, however, had "no further questions" for Trooper Johnson. [II R.R. at 28]. The burden was on the State to prove that

Appellant was legally arrested and the State simply failed to act by not questioning the arresting officer concerning Appellant's arrest.

For the above reasons, this Court should hold that Appellant properly preserved this issue for appeal and further hold that the court of appeals did not err by so concluding.

## APPELLANT'S RESPONSE TO THE STATE PROSECUTING ATTORNEY'S SECOND ISSUE PRESENTED

In its second point, the State argues that objective facts established probable cause for Appellant's arrest and that the court of appeals applied a subjective standard of review. [State's Br. at 13-14]. However, the court of appeals properly applied the correct standard of review. *Clement*, 461 S.W.3d at 281-82. The test for probable cause is an objective one, unrelated to the arresting officer's beliefs, and requires consideration of the totality of the circumstances. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). The court of appeals explicitly declined to speculate on what Trooper Johnson's beliefs were or other possible justifications for arresting Appellant. *Clement*, 461 S.W.3d at 282. Instead, the court properly focused on the objective reason espoused by Trooper Johnson on the record. *Id*. Again, Trooper Johnson

testified that he arrested Appellant based on the odor of alcohol on his breath. [II R.R. at 26]. Trooper Johnson could not have arrested Appellant for the speeding violation. [II R.R. at 27], *see also Owens v. State*, 861 S.W.2d 419, 420 (Tex. App.—Dallas 1993, no pet.).

Contrary to the State Prosecuting Attorney's "dispositive facts," Trooper Johnson's testimony revealed only the single basis for Appellant's arrest. Trooper Johnson testified that the anonymous phone call reported an intoxicated person in the Exxon store. [II R.R. at 16]. The anonymous caller did not report that "Appellant was drunk and would soon be getting on the road in a white Pontiac…" as the State Prosecuting Attorney asserts. (State's Br. at 15). The call did not mention that Appellant was leaving the store, or getting into a white Pontiac. [II R.R. at 16-17]. Trooper Johnson did not observe anyone get into the white Pontiac. [II R.R. at 20]. Trooper Johnson stopped the white Pontiac "for speed." [II R.R. at 25]. Trooper Johnson smelled alcohol on Appellant's breath. [II R.R. at 26]. Appellant did not do any field sobriety tests and was arrested based upon the odor of alcohol on his breath. [II R.R. at 26]. Appellant told Trooper Johnson what he had to drink. [II R.R. at 28]. Trooper Johnson testified that, in pulling over,

Appellant stayed preferably within the shoulder of the road. [II R.R. at 24-25]. Appellant did not violate any other traffic laws, nor was he weaving within his lane. [II R.R. at 23]. Trooper Johnson's report indicated that Appellant "almost struck a guardrail;" however that is "because the white shoulder line of the guardrail, there's barely enough room for a vehicle being there." [II R.R. at 23].

Based on the evidence adduced at the hearing, the court of appeals correctly held that the trial court erred by denying Appellant's motion to suppress. The anonymous caller was not a factor in Trooper Johnson's decision to detain Appellant. Appellant was speeding. Appellant was not weaving within his lane or violating any other traffic laws. Appellant's "keen driving" allowed him to stop his vehicle on the shoulder of a road where "there's barely enough room for a vehicle…" [II R.R. at 23-24]. Appellant's breath smelled of alcohol. [II R.R. at 26]. Because of that odor of alcohol, Trooper Johnson arrested Appellant. [II R.R. at 26]. Considering the totality of the circumstances, Appellant's arrest was not supported by probable cause. Based on the record, and the facts developed at the hearing, the evidence was insufficient to show that Trooper Johnson had probable cause to arrest Appellant.

For the above reasons, this Court should find that the court of appeals applied the correct standard of review, affirm the court of appeals' decision, and hold that Appellant's arrest was not supported by probable cause.

## CONCLUSION AND PRAYER

Appellant prays that the Court of Criminal Appeals affirm the decision of the court of appeals reversing the trial court's denial of Appellant's Motion to Suppress.

Respectfully submitted,

/s/ Ray Napolitan
RAY NAPOLITAN, Attorney at Law
State Bar Number 24076583

**THE LAW OFFICE OF JIM SHAW**
916 W. Belknap Street
Fort Worth, Texas  76102
817-877-0401   Fax 817-877-0404
Attorneys for Appellant

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Brief for Appellant was delivered electronically to the office of the Wise County District Attorney and to the office of the State Prosecuting Attorney on this 26th day of October, 2015.

/s/ Ray Napolitan
RAY NAPOLITAN

# CERTIFICATE OF COMPLIANCE WITH RULE 9.4

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), this is to certify that this brief complies with the volume limitation of Texas Rule of Appellate Procedure 9.4(i)(2)(B) and the typeface requirements of Texas Rule of Appellate Procedure 9.4(e). This brief has been prepared in a conventional typeface, using Microsoft Word, in 14-point New Century Schoolbook. This brief is computer-generated and does not exceed 15,000 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this brief contains 2605 words. The word count in this Certificate of Compliance excludes the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ Ray Napolitan
RAY NAPOLITAN