

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1693-11

### MICHAEL PAUL EVERITT, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, KEASLER, HERVEY, COCHRAN, and ALCALÁ, JJ., joined. PRICE and WOMACK, JJ., concurred.

## O P I N I O N

A jury found appellant guilty of driving while intoxicated. At trial, the state sought to introduce videotape evidence of appellant's admission that he had ingested hydrocodone earlier that day, along with expert testimony about the effects of combining hydrocodone and alcohol. Appellant objected but, after a hearing on the objection, the trial court allowed the state to introduce the videotape evidence and the expert testimony.

After trial, appellant appealed, arguing *inter alia*, that "the trial court abused its discretion by admitting evidence of drug use without a proper foundation showing its relevance." The court

of appeals held that appellant did not properly preserve that issue for appeal and overruled the issue. *Everitt v. State*, No. 01-10-00504-CR, 2011 WL 4609708 (Tex.App.–Houston [1st Dist.] Oct. 6, 2011) (mem. op.). Appellant petitioned this Court for review, raising two issues: whether the court of appeals erred in finding that appellant did not properly preserve error; and whether the trial court abused its discretion in admitting the expert testimony. We granted review on both issues.

We now hold that the court of appeals erred in finding that appellant did not properly preserve error and sustain appellant's first issue. We reverse the court of appeals and remand this cause to that court for consideration of appellant's second issue: whether the trial court abused its discretion in admitting the expert testimony.

**Facts**

At approximately 2:30 A.M. on January 22, 2010, appellant was pulled over by a Houston police officer. The officer had observed appellant on his motorcycle weaving in and out of lanes at speeds up to 90 miles per hour. The officer who pulled appellant over testified at trial that he noticed several signs that appellant might be intoxicated: the smell of alcohol coming from appellant's helmet, appellant's difficulty maintaining balance and understanding questions, and appellant's slurred speech and bloodshot eyes. Appellant refused to perform field sobriety tests. When questioned by the officer, appellant admitted to having a drink at 5:00 P.M. the day before.

The officer called a more senior police officer to the scene for assistance. The second officer arrived at the scene at approximately 3:30 A.M. The second officer testified at trial that she smelled alcohol on appellant's breath and noticed that he could not stand without swaying. She also noted that he asked her "inappropriate" questions. She arrested appellant for driving while intoxicated and brought him to the police station's "Intox Room."

In the Intox Room, appellant was again asked to take sobriety tests. He agreed to take the Rhomberg test[1] and was videotaped while taking it. Based on swaying during that test, the test administrator believed that appellant was impaired. Appellant refused to take two other sobriety tests. When asked whether he had any injuries, appellant responded that he had taken "hydrocodeine . . . earlier today maybe" for a back injury. Hydrocodeine is a common misnomer for hydrocodone. *Everitt*, 2011 WL 4609708 at *4.

Appellant was charged with driving while intoxicated. He plead not guilty. At trial, the state sought to introduce the video-recorded evidence of appellant admitting to taking hydrocodone, along with expert testimony concerning the effects of hydrocodone mixed with alcohol. Appellant filed a motion to suppress the statement on the grounds that "without competent expert testimony, any statements [appellant] made with respect to his hydrocodeine use are irrelevant." Appellant argued before the trial court that, "under DeLaRue [sic] and Layton . . . [appellant's statement admitting use of hydrocodone] is both irrelevant and it proves to be a substantial liability."[2]

The trial court held a hearing on appellant's motion to suppress. The court called the hearing

---

[1] In a Rhomberg test, "the subject is asked to close his eyes, tilt his head back, and estimate when 30 seconds have passed." *Everitt*, 2011 WL 4609708 at *3.

[2] In *DeLarue v. State*, 102 S.W.3d 388, 401 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd), the court of appeals held that the trial court erred when it admitted evidence showing the presence of marijuana in the defendant's system without proof of reliability through a *Kelly-Daubert* hearing.

In *Layton v. State*, 280 S.W.3d 235, 242 (Tex. Crim. App. 2009), we held that, "without expert testimony to provide the foundation required to admit scientific evidence, the testimony regarding Appellant's use of prescription medications was not shown to be relevant."

a "[Rule] 702 hearing"[3] and instructed the state to "call [its] expert regarding Kelly Daubert."[4] The state called Officer LaSalle, who testified extensively about his qualifications as a Drug Recognition Expert ("DRE"), the methods used for evaluating the presence of drugs in a person's body, and the impairing effects of hydrocodone mixed with alcohol. The officer also specifically testified that, based on his viewing of the videotape, he saw "several signs of intoxication that would be consistent with the use of hydrocodone" and that if appellant had taken hydrocodone at midnight or later, he still would have been under the influence of the drug when he was driving at 2:30 A.M. During the hearing, the court expressly acknowledged its role as the "gatekeeper" and questioned the witness directly.

After the hearing, the court ruled that the state could show the portion of the videotape in which appellant admitted to using hydrocodone and could also call its DRE to testify before the jury. Specifically, the court stated,

> I'm going to permit the jury to hear about Mr. Everitt's hydrocodone statement. My theory is this: He discriminates in his own mind between drinking yesterday and taking hydrocodone today. He's stopped at 2:35 A.M., which is two and a half hours into today. Officer LaSalle said that it is a psycho-physical reactive drug when taken for approximately six to eight hours. We don't know the dosage. We do know whatever is there could be psycho-physical reactive at the time he stopped that night. I think it's relevant, probative, and while prejudicial, not unfairly prejudicial.

When appellant asked for the court to clarify whether it would allow the DRE to testify before the jury, the court replied, "Yeah. If the State wants him to."

---

[3] Tex. R. Evid. 702 ("Rule 702 ") provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

[4] The trial court was referring to *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). These cases require the trial court to act as gatekeeper in deciding whether to admit scientific evidence.

Appellant renewed his objections when the videotape was shown to the jury. Appellant based his objection on "the *LaRue* and *Layton* issue." During the DRE's testimony about the combined effects of hydrocodone and alcohol, appellant generally objected to the lack of foundation for the DRE's testimony. At the end of the DRE's testimony, appellant reiterated his objection by stating, "I would like to reurge our Motion to Suppress both on the hydrocodeine issue which encompasses both the Layton and LaRue as well as the Miranda/38.22 issue."

## I. The Court of Appeals Opinion

On the issues now before this Court, the court of appeals held that appellant "obtained no ruling on the admissibility of [the expert's] opinions based on his review of the video recording" and that, accordingly, appellant failed to preserve error. *Everitt*, 2011 WL 4609708 at *14. According to the court of appeals, "the trial court merely ruled that Everitt's admission of hydrocodone use was relevant, not unfairly prejudicial, and therefore admissible," but "[t]he trial court never ruled on the reliability of [the DRE's] analysis. . . ." *Id.* It did not, therefore, reach the issue of abuse of discretion.

## II. Analysis

### A. Preservation under Rule 33.1

To preserve an issue for appellate review, a complainant must have made a timely and specific objection, and the trial court must have ruled on the objection either expressly or implicitly. TEX. R. APP. P. 33.1(a). The objection must be specific enough "to make the trial court aware of the complaint." *Id.* Rejecting hyper-technical requirements for preservation, we have held that "all the party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Layton v. State*, 280

S.W.3d 235, 239 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992); *see also Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007) ("[W]e will not be hyper-technical in examination of whether error was preserved.").

In the present case, appellant has satisfied these requirements. He let the trial court know what he wanted by filing a motion to suppress and following up with objections to admission. He made it clear why he thought he was entitled to suppression by repeatedly citing *DeLarue* and *Layton*. And he did all of this clearly enough for the trial court to understand the objection at the appropriate time in the trial, evidenced by the trial court also referring repeatedly to *DeLarue* and *Layton* and holding a Rule 702 hearing to vet the state's expert.

The court of appeals's parsing of appellant's objections is the kind of hyper-technical analysis that we have repeatedly rejected. It erred by distinguishing between admitting scientific evidence and admitting expert testimony under Rule 702.

Scientific evidence and expert testimony are typically admitted together. *Kelly*, 824 S.W.2d at 572 ("[B]ecause of its nature, scientific evidence will almost always be offered through the testimony of experts."). Our holding in *Layton* makes clear that a defendant's admission to taking drugs is relevant to show intoxication only with competent testimony as to the effect of the drug on the defendant. *Layton*, 280 S.W.3d at 242 ("Without expert testimony to provide the foundation required to admit scientific evidence, the testimony regarding Appellant's use of prescription medications was not shown to be relevant.").

Expert testimony about scientific evidence may be admitted at trial only if it is both reliable and relevant. *Kelly,* 824 S.W.2d at 572. ("[T]he trial court's first task is to determine whether the testimony is sufficiently reliable and relevant to help the jury in reaching accurate results."); *see also*

*Daubert*, 509 U.S. at 589 ("[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."). Reliability refers to the scientific basis for the expert testimony, while relevance refers to the "fit" of the scientific principles to the evidence at hand. *Jordan v. State*, 928 S.W.2d 550, 553-54 (Tex. Crim. App. 1996).

The court of appeals erred in distinguishing between admissibility based on relevance and admissibility based on reliability. Under Rule 702 and our precedent, both relevance and reliability of the expert testimony are components of a trial court's *Daubert/Kelly* ruling on admissibility. *See* TEX. R. EVID. 702; *Kelly*, 824 S.W.2d at 572; *see also Jordan v. State*, 928 S.W.2d at 553-54. The trial court's suppression hearing referred to *DeLarue*, a case requiring that evidence be reliable, and *Layton*, a case requiring that evidence be relevant. In discussing its ruling, the trial court stated, "We're on a real tightrope between the *Layton* case and the *DeLarue* case as the 702 gatekeeper here. The State is a proponent of the evidence concisely prejudicial, unfairly prejudicial, and probative and relevant are probably the four things to deal with in Mr. Everitt's case today."

Appellant's attorney then added, "I would also like to point out specifically that it must be -- that any opinions must be reliable under 702 and they have to show by clear and convincing evidence."

After more discussion, the trial court ruled that it would permit the jury to hear about appellant's hydrocodone statement because, even though the dosage was unknown, the DRE testified that hydrocodone "is a psycho-physical reactive drug" that is active for approximately six to eight hours and, in this case, appellant had taken hydrocodone approximately two and a half hours before he was stopped. The judge concluded that the evidence was relevant and not unfairly prejudicial.

Appellant then sought clarification that the judge was ruling that the officer could testify in

front of the jury. The judge responded that the officer could testify about appellant's statement and videotape and that the videotape with the appellant's statement would itself be admitted. From the record of the proceedings at issue, it is clear that the judge was ruling on the reliability and relevance of the DRE's testimony and the admission of the videotape itself.

### III. Conclusion

The judgment of the court of appeals as to preservation of error is reversed. We remand this cause to that court so that it may consider whether the trial court abused its discretion in admitting the videotape evidence and the accompanying expert testimony.

Delivered: February 6, 2013
Publish