

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NOS. 02-14-00379-CR
## 02-14-00380-CR
## 02-14-00381-CR
## 02-14-00382-CR

RODERICK DIXON                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NOS. 1352360D, 1352834D, 1352836D, 1376529W

----------

## MEMORANDUM OPINION[1]

----------

Appellant Roderick Dixon entered open guilty pleas to two counts of robbery causing bodily injury and to two counts of aggravated robbery with a deadly weapon, each alleged in a separate cause. The trial court found Appellant guilty on all counts and sentenced him to ten years' confinement on

---

[1]*See* Tex. R. App. P. 47.4.

both counts of robbery and on one count of aggravated robbery and to twenty years' confinement on the second count of aggravated robbery, with all sentences to run concurrently. In two points, Appellant argues that the trial court abused its discretion by admitting photographs and a video depicting extraneous offenses into evidence at the punishment phase of the trial. We affirm.

**Background**

On September 14, 2013, J.H. met with a potential buyer of a PlayStation 3 (PS3) that he had listed for sale on Craigslist. When J.H. placed the PS3 on the hood of the potential buyer's car, the buyer said, "It's been a long day," and three males, one of whom was Appellant, attacked J.H. One of the attackers, who was not Appellant, hit J.H. multiple times in the head. The three males took the PS3 and drove away. The lacerations from the attack on J.H.'s face and head required stitches.

On December 1, 2013, J.C. and his son, R.C., met with Tori Bryant, a potential buyer of a PlayStation 4 (PS4) they had advertised on Craigslist. While Bryant distracted them, Appellant, Jordan Robinson, and Manuel Torres attacked J.C. Appellant hit J.C. on the head with a bat while one of the other assailants took the PS4 and several videogames from J.C. Appellant swung the bat at R.C. but missed. Appellant, Robinson, and Torres fled. As a result of the attack, J.C. lost a large amount of blood from a wound on his forehead.

Appellant, Robinson, Torres, and Gemma Perez went together to pawn the stolen PS4. Appellant pawned the PS4, along with four of the games that were

2

reported stolen in the robbery. A detective with the Fort Worth Police Department located the PS4 at the pawn shop. Appellant's name was on the pawn ticket, and the pawn shop clerk later identified Appellant in a lineup.

After the December 1 robbery, Appellant, Robinson, Torres, and Perez purchased a Taser and a rubber pellet gun. On December 4, 2013, J.G. and his girlfriend met with a potential buyer of a PS4 he had posted for sale on Craigslist. Perez drove Appellant, Torres, Robinson, and Bryant to and from the meeting in Perez's sister's car. J.G. parked next to their vehicle in a mall parking lot, placed the PS4 on the car's hood, and discussed the transaction with Perez. One of the males from Perez's car approached J.G. from behind; tased him on his neck; yelled, "You're getting jacked"; mentioned having a gun; and tased J.G. on his left hand. Torres pointed the pellet gun at J.G. and demanded the PS4. Torres yelled to Appellant and Robinson to "[g]et the knife." J.G. surrendered the PS4, and the assailants fled in Perez's sister's car. J.G. and his girlfriend pursued them in his vehicle and called 911. They were able to get the license plate number on Perez's sister's car. After the 911 dispatcher told J.G. to discontinue his pursuit, they returned to the mall, where they met with police officers and gave them the license plate number. Mall surveillance video captured the robbery. The license plate on Perez's sister's car belonged to a vehicle registered to Perez's mother.

On December 5, 2013, the detective who located the PS4 at the pawn shop determined Appellant had outstanding warrants and went to the apartment

3

where Appellant was living at the time. S.M.—who identified herself as Appellant's ex-girlfriend[2]—was at the apartment, but Appellant was not. The detective showed S.M. the pawn shop surveillance video, and she identified Appellant as the person pawning the PS4. She also identified Bryant and Robinson.

Appellant was arrested at the apartment on December 12, 2013. During a consensual search of the apartment, the detective discovered a Taser, along with the cap Appellant was wearing when he pawned the PS4. Appellant waived his rights and confessed to committing the three robberies, striking J.C. with a baseball bat, pawning J.C.'s PS4, and purchasing the pellet gun and Taser with Robinson, Torres, and Perez. The detective obtained a warrant to search Appellant's car and found the bat and its sales receipt inside. Appellant stated he was under the influence of marijuana at the time he committed the robberies and that he needed the money for food and shelter.

At the punishment phase of the trial, the trial court admitted into evidence a Presentence Investigation Report, which contained, among other things, the events set forth above, and heard testimony from the detective, Appellant's stepmother, his father, and S.M. Over Appellant's relevance objection, the trial court admitted into evidence a YouTube video posted on Bryant's YouTube channel and screenshots of Bryant's YouTube profile page with links to videos

---

[2]S.M. testified during the punishment phase of the trial that she and Appellant considered themselves boyfriend and girlfriend.

4

that she had either commented on or uploaded, which included a link to the YouTube video.[3] The video showed Appellant, Robinson, Bryant, Randal Bracy,[4] and S.M. having what S.M. described as a "little kick back" in a hotel room, which involved "studio time" and smoking and drinking. Appellant was smoking what appeared to be "some sort of hand-rolled item," and the parties were discussing drinking codeine, which the detective testified was an illegal drink made by "mix[ing] 25 times the amount of codeine cough syrup in with . . . Sprite, Mountain Dew, et cetera, to kind of give them a high." They were also rapping and using racial slurs. The trial court also admitted a screenshot of S.M.'s Facebook cover photo in which Appellant appeared to be displaying gang colors and flashing a gang sign.[5]

## Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010), *cert. denied*, 131 S. Ct. 2966 (2011); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). As long as the trial court's ruling falls

---

[3]The State explained to the trial court that the purpose of these screenshots was to show "how to get to the video."

[4]The detective identified Appellant, Robinson, Bryant, and Bracy in the video. Bracy was one of the participants in the September 2013 robbery. Bracy, Bryant, Perez, Robinson, and Torres were charged for their participation in the robberies.

[5]S.M. testified that Appellant claimed to be part of the Tree Top gang.

within the zone of reasonable disagreement, we will affirm the trial court's decision. *Martinez*, 327 S.W.3d at 736; *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

## Analysis

In a consolidated argument, Appellant contends the trial court abused its discretion by admitting over his relevance objections the screenshots and the video because they were not taken in temporal proximity to the offenses and their minimal probity, if any, was substantially outweighed by their unfair prejudice. *See* Tex. R. Evid. 401, 403.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt*, 407 S.W.3d at 263. A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Preservation of error is a systemic requirement that this court should review on its own motion. *Reynolds*

6

*v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014); *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012).

When the State offered into evidence a screenshot of S.M.'s Facebook cover photo in which Appellant appeared to be displaying gang colors and flashing a gang sign, the trial court asked Appellant if he had any objection to the exhibit. Appellant stated that he did not. Because Appellant did not object to the admission of the Facebook cover photo, he has forfeited any complaint that the trial court abused its discretion in admitting it into evidence. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a).

As to the YouTube evidence, the State argues that Appellant's trial objection did not preserve his arguments under rule 403. Appellant asserts on appeal that the probative value of the screenshots of Bryant's YouTube channel and the video was substantially outweighed by unfair prejudice. *See* Tex. R. Evid. 403. But Appellant only objected to the admission of the screenshots and the video on relevancy grounds. *See* Tex. R. Evid. 401. His trial objection did not alert the trial court that he was complaining that their prejudicial effect outweighed their probative value. *See Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014) ("The complaining party must [object] . . . clearly enough for the judge to understand and at a time when the trial court is in a position to do something about it. . . . We are not hyper-technical . . . but the point of error on appeal must comport with the objection made at trial."). Accordingly, Appellant has forfeited his complaint that the probative value of the screenshots and the

7

video was outweighed by their prejudicial effect.  *See Sony v. State*, 307 S.W.3d 348, 355–56 (Tex. App.—San Antonio 2009, no pet.) (holding relevance objection to photographs at trial did not preserve appellate argument based on rule 403); *see also* Tex. R. App. P. 33.1(a)(1); Tex. R. Evid. 103(a).

We now turn to Appellant's argument that the video and the screenshots of Bryant's YouTube channel were not relevant because "they could not be identified to be taken in temporal proximity to the offenses."  The detective testified that he did not know when the video was made and that he did not know if the video was associated with the robbery.  S.M. testified that the video "happened last year, but it was before any of these robberies occurred."  The punishment trial took place on September 5, 2014, and the robberies occurred in September and December 2013.  Thus, the video was made, at most, approximately nine months before the first robbery.

Article 37.07, section 3(a) of the Texas Code of Criminal Procedure governs the admissibility of evidence during the punishment phase of a non-capital case.  *Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008); *see* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 2015).  Article 37.07, section 3(a)(1) provides that

> evidence may be offered by the [S]tate and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by

8

the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). The definition of "relevant" as stated in rule 401 does not readily apply to article 37.07. *Sims*, 273 S.W.3d at 295; *see Hayden v. State*, 296 S.W.3d 549, 552 (Tex. Crim. App. 2009) ("Borrowing from the definition of 'relevant' in Texas Rule of Evidence 401 is of little avail because the factfinder's role during the guilt phase is different from its role during the punishment phase."). Evidence is "relevant" to a punishment determination if that evidence will assist the factfinder in tailoring an appropriate sentence in a particular case. *Sims*, 273 S.W.3d at 295. When a defendant requests community supervision—as the Appellant did—a trial court may reasonably deem any character trait that pertains to the defendant's suitability for community supervision to be a relevant matter for the sentencer to consider. *Sims*, 273 S.W.3d at 295.

Section 3(a)(1) of article 37.07 places no time restriction on punishment evidence. *See Thompson v. State*, 59 S.W.3d 802, 808–09 (Tex. App.—Texarkana 2001, pet. ref'd); *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). "The provisions of article 37.07 do not address the effects, if any, of a statute of limitations for previous criminal offenses nor do they address the staleness of bad acts." *Tow v. State*, 953 S.W.2d 546, 547–48 (Tex. App.—Fort Worth 1997, no pet.). Objections based on remoteness go to the weight, not the

9

admissibility, of the evidence.  *See Thompson*, 59 S.W.3d at 808 (citing *Nethery v. State*, 692 S.W.2d 686, 706 (Tex. Crim. App. 1985)).

Here, Appellant's conduct and lifestyle, as reflected in the YouTube video, were relevant in determining whether his request for community supervision should be granted.  The time between the events reflected in the video and the offenses to which Appellant pled guilty did not make the video so remote as to have no probative value.  Thus, we cannot say the trial court abused its discretion by admitting the YouTube video and the screenshots of Bryant's YouTube channel into evidence at the punishment phase of the trial.

For these reasons, Appellant's two points are overruled.[6]

### Conclusion

Having overruled both of Appellant's points on appeal, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 18, 2016

---

[6]Appellant relies heavily on *Blackburn v. State*, 820 S.W.2d 824 (Tex. App.—Waco 1991, pet. ref'd).  *Blackburn* involved the relevancy of a photograph admitted into evidence during the guilt-innocence phase of a trial.  After reviewing *Blackburn*, we have determined that it is inapplicable to this case.

10