

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-18-00146-CR

JAMES ROBERTS, JR.                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1390094D

----------

### MEMORANDUM OPINION[1]

----------

Appellant James Roberts, Jr. appeals his convictions for continuous sexual abuse of a small child or children and sexual assault of a child. In three issues, Appellant argues that (1) the trial court erred by allowing a forensic interviewer to testify that she did not observe "any red flags for coaching or lying" on the part of the complainants, (2) the trial court erred by allowing the State to photograph

----

[1]See Tex. R. App. P. 47.4.

Appellant's groin without first obtaining a search warrant, and (3) penal code section 21.02(d) is an unconstitutional violation of Appellant's right to a unanimous jury verdict under article V, section 13 of the Texas constitution. We affirm.

## Factual and Procedural Background

A grand jury indicted Appellant in a two-count indictment for continuous abuse of a young child or children and sexual assault of a child. *See* Tex. Penal Code Ann. §§ 21.02, 22.011 (West Supp. 2017). The first count alleged multiple instances of aggravated sexual assault of a child and/or indecency with a child against two victims, VM[2] and SR—both under fourteen years of age—spanning the years between September 1, 2009, through February 22, 2014. The second count charged Appellant with the sexual assault of VM, a child younger than seventeen years of age, on or about February 22, 2014.

VM was the State's primary witness. She referred to Appellant as her stepdad (though VM and SR's mother, SM, testified that she and Appellant had never married). VM testified that when she was seven years old, Appellant touched her vagina with his hand through her clothing. Appellant's conduct escalated over time. He began rubbing his penis against her vagina and ejaculating on her. VM said Appellant sexually abused her over 100 times. When VM was in sixth grade and about 13 years old, Appellant began

---

[2]We use initials to protect the victims' anonymity. *See McClendon v. State,* 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

penetrating her vagina with his penis.  In February 2014, VM reported Appellant's abuse to SM, and SM reported the abuse to police.

VM testified that Appellant was circumcised and had a large mole on his upper thigh near his penis, both of which characteristics she observed when Appellant was abusing her.  Over Appellant's objection, the trial court admitted into evidence two photographs of Appellant's mole.  SM confirmed that Appellant is circumcised and has a mole on the inside of his leg by his scrotum.

SM testified that days before VM's outcry, she was asleep in bed with Appellant and their three-year-old daughter, SR.  SM awoke to find Appellant rubbing SR's genitals with his hand.

A jury convicted Appellant on both counts.  The jury assessed punishment at confinement for 50 years and 20 years for the two counts, respectively.  The trial court rendered judgment accordingly, and this appeal followed.

**Analysis**

**1.     The trial court erred by admitting expert testimony that VM did not show signs of lying, but the error was harmless.**

In his first point, Appellant argues that the trial court erred by allowing the State's forensic interviewer, Lindsey Dula, to testify that VM did not show signs of lying.

**a.  Standard of review**

We review a trial court's rulings on evidentiary objections for an abuse of discretion.  *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).  A trial

3

court does not abuse its discretion unless its ruling is arbitrary and unreasonable. *Foster v. State*, 180 S.W.3d 248, 250 (Tex. App.—Fort Worth 2005, pet. ref'd) (mem. op.). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* If the trial court's "evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

### b. Dula's testimony and Appellant's objection

Dula is a forensic interviewer for the Alliance for Children. She interviewed VM a few days after VM's outcry to SM. Dula testified that "suggestibility" is "the idea of either suggesting answers or bringing up a topic that wasn't raised before" and that she did not "have any suggestibility concerns with" VM. She further testified that "coaching" is "the idea that a child may be told to say something or told not to say something." She said that during her 60-minute interview with VM, she did not detect any "red flags for coaching or lying."

During a prior voir dire examination outside the jury's presence, Appellant posed the following objection (among others) to Dula's testimony:

> [Appellant's Counsel]: . . . I would object to Ms. Dula rendering an opinion on whether statements are consistent with -- I believe when she said . . . her statements would be consistent with something not being suggestive as in so many words saying that those statements are truthful. We'd object to the -- any opinion on the absence of suggestiveness attached to whatever statements were made in the interview.

4

THE COURT: Well, I'll overrule that objection. She may testify within the realm of her expertise as to what are suggestive questions and whether suggestive questions were used in this instance or not. She can testify as an expert on the area of suggestibility with children in a forensic interview and whether that applied in this case or not.

[Appellant's Counsel]: And I would object to her testifying whether that happened in this case or not.

THE COURT: I'll overrule that. She may testify as to that.

[Appellant's Counsel]: Your Honor, I have one additional related objection, and that is that she testified that she saw no red flags for lying. And that is a roundabout way of saying that she's telling the truth. We'd object to an opinion on that ground, to her issuing that opinion.

. . . .

THE COURT: And I overrule that objection.

### c. Appellant failed to preserve error related to the "coaching" comment.

The State argues that Appellant failed to preserve any error associated with Dula's "coaching" comment. But a careful reading of Appellant's brief shows that while Appellant quotes Dula's "coaching" comment, Appellant's point relies on her "lying" comment. Nevertheless, to the extent Appellant's brief could be read to assign error to the "coaching" comment, we agree with the State that Appellant did not preserve error for our review.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request,

5

objection, or motion. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1461 (2016). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

Appellant objected to Dula's testimony about whether VM exhibited signs of suggestibility or lying. Appellant did not object to Dula's testimony about coaching. Dula gave different definitions for "suggestibility" and "coaching" immediately before Appellant made his objection. Given that context, Appellant's objection to "suggestibility" did not suffice to encompass an objection to "coaching."

Because Appellant did not object to Dula's "coaching" comment, we hold that Appellant did not preserve his complaint (if any) about the "coaching" comment for our review. *See* Tex. R. App. P. 33.1(a)(1).

### d. The trial court erred by admitting the "lying" comment, but the error was harmless.

The State may not elicit expert testimony that a particular child is telling the truth or that child complainants as a class are worthy of belief. *Yount v. State*, 872 S.W.2d 706, 711–12 (Tex. Crim. App. 1993). Nor may an expert offer an

6

opinion on the truthfulness of a child complainant's allegations. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).

The State concedes that the trial court erred by allowing Dula to testify that she saw no "red flags for . . . lying." We agree. We therefore hold that the trial court abused its discretion by overruling Appellant's objection to Dula's "lying" comment and allowing Dula to testify that she saw no "red flags for. . . lying."

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex. R. App. P. 44.2. The erroneous admission of expert testimony is generally non-constitutional error to which rule 44.2(b) applies. *See Schutz v. State*, 63 S.W.3d 442, 444–45 (Tex. Crim. App. 2001) (analyzing harm under rule 44.2(b) when trial court erroneously allowed expert to comment on complainant's credibility); *Yount*, 872 S.W.2d at 712 (holding expert testimony to complainant's truthfulness is not permitted by rule 702). Under rule 44.2(b), we must disregard the error if it did not affect appellant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury[] or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

7

In analyzing whether the erroneous admission of expert testimony was harmful, we may consider, among other things: (1) the strength of the evidence of the appellant's guilt, (2) whether the jury heard the same or substantially similar admissible evidence through another source, (3) the strength or weakness of an expert's conclusions, including whether the expert's opinion was effectively refuted, and (4) whether the State directed the jury's attention to the expert's testimony during arguments. *Sandoval v. State*, 409 S.W.3d 259, 293–94 (Tex. App.—Austin 2013, no pet.) (citing *Coble v. State*, 330 S.W.3d 253, 286–88 (Tex. Crim. App. 2010), *cert. denied*, 564 U.S. 1020 (2011)). "Even in cases in which credibility is paramount, Texas courts have found harmless error when the inadmissible expert testimony was only a small portion of a large amount of evidence presented that the jury could have considered in assessing the victim's credibility." *Barshaw v. State*, 342 S.W.3d 91, 96 (Tex. Crim. App. 2011).

Applying these factors to the evidence in this case, we conclude that the admission of Dula's "lying" comment was harmless. First, the evidence of Appellant's guilt was strong. VM testified at length and in detail about Appellant's abuse. She testified about the appearance of Appellant's penis and mole, testimony that was corroborated by SM. A forensic biologist testified that a rape-kit vaginal smear from VM tested positive for semen.[3] SM found Appellant

---

[3]The biologist testified that a DNA test was inconclusive.

8

sleeping in VM's bed on several occasions. And SM actually saw Appellant sexually abusing SR. The jury also heard that Appellant attempted to cut his own throat with a boxcutter when VM made her outcry to SM.

Second, the jury heard testimony reflecting on VM's credibility and demeanor from other witnesses. A police officer who interviewed VM after her outcry to SM testified that when VM described Appellant's abuse to him, she was "very emotional, mixed emotions at the time. She was anxious, crying. At the time, seems like she had a little anxiety." A sexual-assault nurse examiner who interviewed VM testified that VM "readily answered my questions. She was -- had eye contact and she was tearful." The jury also had the opportunity to assess VM's credibility and demeanor for themselves when VM testified. *See McDonald v. State*, No. 04-02-00748-CR, 2004 WL 383298, at *2, *6 (Tex. App.—San Antonio Mar. 3, 2004, pet. ref'd) (mem. op., not designated for publication) (finding no harm after detective testified he saw nothing to indicate complainant fabricated sexual abuse when, among other things, complainant testified at trial).

The third factor we look to is the strength or weakness of an expert's conclusions. Appellant emphasizes Dula's credentials and notes that he had no "similarly impressive expert to refute [Dula's] opinions." We agree that an expert's credentials and experience can be relevant to the strength of the expert's conclusions. But Dula's actual conclusion on VM's credibility was expressed in a two-word answer—"No, sir"—to counsel's question, "[W]ere there

9

any red flags for coaching or lying?" This conclusion was not particularly strong and does not support a finding of harm.

Only the fourth factor—whether the State directed the jury's attention to the expert's testimony during arguments—weighs in Appellant's favor. The State drew attention to the "red flags for lying" comment in both opening and closing statements. In the State's opening statement, the prosecutor told the jury that Dula would testify that "she saw no red flags," and in closing argument, the State mentioned Dula's credentials and her no "red flags for . . . lying" testimony. But because the State did not dwell on Dula's testimony and it comprised only a small part of the State's overall argument, this factor weighs only slightly in Appellant's favor.

Considering all of the relevant factors, we conclude that, in the context of the entire case against Appellant, the trial court's error in allowing Dula to testify that she saw no "red flags for . . . lying" did not have a substantial or injurious effect on the jury's verdict and did not affect Appellant's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the error. *See* Tex. R. App. P. 44.2(b).

We overrule Appellant's first issue.

**2. Appellant failed to preserve alleged error concerning the trial court's order allowing the State to photograph Appellant's groin.**

In his second issue, Appellant argues that the trial court's order allowing the State to photograph Appellant's groin without requiring the State to obtain a

search warrant violated Appellant's rights under the Fourth Amendment of the United States Constitution and article I, section 9 of the Texas constitution.

Prior to trial, the State filed a motion to photograph a "unique feature" of Appellant's body and served a copy of the motion on Appellant's counsel. The trial court granted the motion. An investigator with the district attorney's office then took the photographs in the trial court's holdover cell. Neither the motion nor the order identifies the "unique feature" in question. At trial, the State offered, and the trial court admitted into evidence over Appellant's objections, two photographs of the mole on Appellant's groin.

The State argues that by waiting until trial to object to the trial court's order and the resulting photographs, Appellant forfeited his complaint about the order. We agree.

An objection must be made as soon as the basis for the objection becomes apparent. Tex. R. Evid. 103(a)(1); *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *Reyes v. State*, 361 S.W.3d 222, 228–29 (Tex. App.—Fort Worth 2012, pet. ref'd); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant." (citations omitted)). There are three main purposes behind requiring a timely, specific objection:

> The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the orderly and effective presentation of the case to the trier of fact.

*Lackey v. State*, 364 S.W.3d 837, 843–44 (Tex. Crim. App. 2012) (quoting *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006)).

Here, the basis for the objections Appellant raised at trial became apparent as soon as the State served on Appellant's counsel its motion to photograph Appellant's "unique feature," and Appellant had the opportunity to object before the trial court granted the order. A timely objection to the State's motion to photograph Appellant (1) would have given the opportunity to prevent or correct any constitutional error associated with its order and (2) would have given the State the opportunity to seek a search warrant if the trial court sustained Appellant's constitutional objections and denied the motion. *See id.* Because Appellant did not make his objections to the State's motion and the trial court's order as soon as the basis for those objections became apparent, we hold that Appellant forfeited his complaint, and we overrule his second issue.

### 3. Penal code section 21.02(d) did not violate Appellant's right to jury unanimity.

In his final issue, Appellant argues that penal code section 21.02(d) violates his constitutional right to jury unanimity. *See* Tex. Penal Code Ann. § 21.02(d) (West 2011) (providing that jury in continuous-sexual-abuse case is

"not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed."). This court rejected the identical argument in *Pollock v. State*, 405 S.W.3d 396, 404–05 (Tex. App.—Fort Worth 2013, no pet.). For the reasons stated in *Pollock*, we overrule Appellant's third issue. *See id.* at 405.

## Conclusion

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

BONNIE SUDDERTH
CHIEF JUSTICE

PANEL: SUDDERTH, C.J.; MEIER and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 21, 2018